```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

 ANDREW MALLEN,

                    Plaintiff,           MEMORANDUM & ORDER
                                         20-CV-3340(EK)

           -against-

 KILOLO KIJAKAZI, ACTING COMMISSIONER
 OF SOCIAL SECURITY,

                    Defendant.

-------------------------------------x
```
ERIC KOMITEE, United States District Judge:

Plaintiff Andrew Mallen seeks judicial review of the Commissioner of the Social Security Administration's decision to deny his claims for disability insurance benefits. Before the Court are the parties' cross-motions for judgment on the pleadings. For the following reasons, I grant the Commissioner's motion and deny Plaintiff's cross-motion.

## I. Background

**A. Procedural Background**

Plaintiff applied for disability benefits on September 18, 2015, alleging that he had been disabled since February 2, 2015. The agency initially denied his claim. Plaintiff requested a hearing and appeared before an administrative law judge ("ALJ") in 2018. The ALJ concluded that Plaintiff was not disabled and therefore not entitled to disability insurance

benefits or supplemental security income.  The Appeals Council denied Plaintiff's request for review of the ALJ's decision, rendering it final.  This appeal followed.

**B.    The ALJ's Disability Evaluation**

Under the Social Security Act, "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Administration's regulations require ALJs to follow a five-step sequence in evaluating disability claims.

First, the ALJ determines whether the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  If not, the ALJ evaluates (at step two) whether the claimant has a "severe impairment" — that is, an impairment or combination of impairments that "significantly limits" the claimant's "physical or mental ability to do basic work activities."  *Id.* § 404.1520(c).  If the ALJ identifies a severe impairment, he must determine whether it meets or equals one of the impairments listed in Appendix 1 of the regulations (the "Listed Impairments").  *Id.* § 404.1520(d); 20 C.F.R. Part 404, Subpart P, Appendix 1.  If so, the ALJ will deem the applicant disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

2

Here, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of his disability, and had the following severe impairments: obesity, lumbar spine disorder, and lumbar radiculopathy. Administrative Transcript ("Tr.") 13, ECF No. 8. The ALJ determined that none of these impairments rose to the level of a "Listed Impairment." *Id.* at 16.

At step four, the ALJ must determine a claimant's residual functional capacity ("RFC"), which is the most a claimant can do in a work setting notwithstanding his limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ concluded that Plaintiff had the residual capacity to perform "sedentary work" with limitations. Tr. 17. Those limitations included that Plaintiff could lift or carry up to ten pounds occasionally; could not operate foot controls with his right foot; could occasionally climb ramps and stairs; could occasionally balance, stoop, kneel, and crouch, but not climb ladders or scaffolds or crawl; and that he could not be exposed to unprotected heights or vibrations. *Id.*

The ALJ then considered whether, in light of the RFC determination, the claimant could perform "past relevant work." 20 C.F.R. § 404.1520(f). He found that Plaintiff could not perform his past work as a construction superintendent. At step five, the ALJ evaluated whether the Plaintiff could perform jobs

3

existing in significant numbers in the national economy. *Id.* § 404.1520(g). The ALJ determined that Plaintiff could perform such jobs, including as a "stuffer" and eyeglass-frame polisher. Tr. 25. Given that conclusion, the ALJ held that Plaintiff was not disabled.

## II. Standard of Review

A district court has jurisdiction to review the final judgment of the Commissioner denying an application for Social Security disability benefits. 42 U.S.C. § 405(g). The review is limited to two questions: whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotations omitted). "[I]f supported by substantial evidence," the Commissioner's factual findings "shall be conclusive." 42 U.S.C. § 405(g).

## III. Discussion

On appeal, Plaintiff argues that the ALJ's RFC determination was flawed for multiple reasons. He contends, first, that the ALJ failed to perform a function-by-function assessment of his residual capacity. He goes on to argue that

4

the ALJ failed to reconcile the opinions of two treating physicians with the other medical evidence in the record, as required by *Burgess*, 537 F.3d at 130 (vacating and remanding where "the ALJ failed to give good reasons for not crediting" a treating physician's opinion). Finally, Plaintiff argues that it was improper for the ALJ to rely on certain testimony by a vocational expert, where the expert was responding to a hypothetical question from the ALJ that omitted certain limitations about which Plaintiff's treating physicians opined. *See* Pl. Mem. in Supp. of Mot. for J. on the Pleadings at 24-25, ECF No. 11. Each of these claims is without merit.

The RFC is a "function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 374184 (1996). Nevertheless, "[r]emand is not necessary merely because an explicit function-by-function analysis was not performed." *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). Instead, an ALJ's decision will be upheld if it "affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence." *Id.*

That is the case here. The ALJ's ultimate determination — that the identified impairments were severe but not disabling — reflected a clear and careful balancing of Plaintiff's functional capacities. The ALJ provided extensive

5

analysis of, and cited to, Plaintiff's treating and non-treating sources' opinions and findings, evidence of his course of treatment, and Plaintiff's subjective statements and daily activities, as discussed below.

In a July 2016 questionnaire and subsequent narrative report, Dr. Caprarella (a neurologist and one of Plaintiff's treating physicians) concluded that Plaintiff could not perform even sedentary work. Tr. 596-605. She also concluded that Plaintiff's pain impaired his attention and concentration and that, as a result, he would need to take twenty- to thirty-minute breaks at least every hour and would be absent two or three days per month. *Id.* at 599-600. She opined that Plaintiff was "completely disabled" due to "distal weakness of the right lower extremity," "ongoing pain," and a need for narcotics and other medications that would impair his ability to function, and therefore render him incapable of sustained employment. *Id.* at 605. Plaintiff contends that the ALJ erred in not according this conclusion controlling weight.

Because Plaintiff filed his claim before March 27, 2017, the "treating physician rule" applies. *See Crowell v. Comm'r of Soc. Sec. Admin.*, 705 F. App'x 34, 35 (2d Cir. 2017). Under this rule, an ALJ must give a treating physician's opinion "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is

6

not inconsistent with the other substantial evidence in [the] case record." *Burgess*, 537 F.3d at 128 (quoting 20 C.F.R. § 404.1527(d)(2)). Nevertheless, an ALJ may discount a treating physician's opinion when it is conclusory or "not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). In doing so, an ALJ must consider, among other things, "the length of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess*, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527) (cleaned up). The ALJ need not undertake "a slavish recitation of each and every factor," however, where his "reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

Here, the ALJ properly discounted Dr. Carprarella's conclusion that Plaintiff was completely disabled, given that disability is an ultimate legal issue, "reserved to the Commissioner." *Snell v. Apfel*, 177 F.3d 128, 133-34 (2d Cir. 1999) (quoting 20 C.F.R. § 404.1527). Beyond that, the ALJ more than adequately reckoned with Dr. Carparella's medical findings in light of the full record. He acknowledged that Dr.

7

Carprarella's examinations revealed weakness in Plaintiff's right lower extremity and "clumsy tandem walking," among other things. Tr. 20, 604. But he also noted, appropriately, that Dr. Carprarella's findings showed normal tone and muscle bulk, intact strength and normal reflexes, which did not support total disability. *Id.* at 21, 689, 691, 693, 726, 740, 747; *see Pellam v. Astrue*, 508 F. App'x. 87, 90 (2d Cir. 2013) (upholding ALJ's RFC determination where he rejected physician's opinion in part, but adequately engaged with physician's findings and treatment notes).

Perhaps more importantly, the ALJ pointed out specific inconsistencies between Dr. Caprarella's findings and other record evidence. For example, Dr. Caprarella opined that Plaintiff's pain would interfere with concentration, but Plaintiff denied experiencing concentration problems. Tr. 21, 511. She noted that Plaintiff required the use of a cane, but Plaintiff testified that despite being uncomfortable, he actually could walk without a cane. *Id.* at 82. And the record revealed no other indication that Plaintiff required an assistive device. *Id.* at 660-61. In addition, Dr. Caprarella's opinion was inconsistent with Plaintiff's generally conservative post-operative treatment, which did not include emergency treatment or additional surgery for any exacerbation in symptoms. *Id.* at 21, 466-67, 579, 695-702, 775-87; *See Netter*

8

*v. Astrue,* 272 F. App'x 54, 56 (2d Cir. 2008) (conservative treatment may be considered as "additional evidence supporting the ALJ's determination"); 20 C.F.R. § 404.1529(c)(3)(v) (an ALJ may consider the treatment a claimant received for relief of pain or other symptoms).

Dr. Lopez (an orthopedist who also treated Plaintiff) made no mention of concentration issues or specific vocational limitations in his assessments. Nevertheless he asserted, in conclusory fashion, that Plaintiff "remains totally disabled. He is not fit for any activity." Tr. 541. The ALJ appropriately discounted this opinion, noting that it was unsupported by and inconsistent with other treatment notes in the record. *Id.* at 22.

Plaintiff's daily activities also tended to undermine his claim of total disability. *See Id.* at 24; *see also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (claimant's daily activities undermined disability allegations). Plaintiff was able to handle personal care such as bathing, dressing, and grooming (albeit with some difficulty). Tr. 557. He performed stretching exercises, simple kitchen tasks, rolled the garbage to the curb, and shopped for clothing and gifts. *Id.* at 24, 238-39, 245, 557. He also attended his children's school events three to four times per year and dropped them off at school in the morning. *Id.* at 24, 237, 240.

9

Finally, the opinions and findings of four non-treating sources conflicted (in varying degrees) with Dr. Caprarella's and Lopez's opinions and Plaintiff's claim of total disability. One such source was Dr. Fuchs, an orthopedic surgeon who reviewed the record and answered interrogatories regarding Plaintiff's physical impairments in April 2018. *Id.* at 22-23, 770-73. Dr. Fuchs opined that Plaintiff could lift and carry ten pounds occasionally; sit for one hour continuously and six hours total; and stand or walk one hour continuously and two to three hours total. *Id.* at 772. He further concluded that Plaintiff could not operate foot controls with the right foot, but that he could occasionally balance, stoop, kneel, crouch, and climb ramps and stairs, and could never crawl or be exposed to heights and vibrations. *Id.* The ALJ gave great weight to Dr. Fuchs's opinion in part because his opinion was "well supported by and consistent with treatment notes and the claimant's conservative course of care [and daily activities]." *Id.* at 23.

Plaintiff argues that the ALJ erred in giving Dr. Fuchs's opinion great weight. The Social Security regulations, however, "permit the opinions of non-examining sources to override treating sources' opinions provided they are supported by evidence in the record." *Schisler v. Sullivan*, 3 F.3d 563, 570 (2d Cir. 1993) ((citing 20 C.F.R. §§ 404.1527(f) [now (e)]

10

and 416.927(f) [now (e)]).  While "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a treating physician," *Conyers v. Comm'r of Soc. Sec.*, No. 17-CV-05126, 2019 WL 1122952, at *19 (S.D.N.Y. Mar. 12, 2019) (internal quotations omitted), the ALJ did not reject the treating physicians' opinions on such a limited basis here. Instead, the ALJ also relied on the opinions of consultative physical examiner Dr. Caiati and non-examining orthopedist Dr. Bijpuria, as well as other record evidence.  *See, e.g.*, Tr. 22-23, 563; *see also Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) ("The report of a consultative physician may constitute [ ] substantial evidence [by which to compare the treating physician's opinion].").

In examining Plaintiff, Dr. Caiati observed normal stance, "minimal" limp on the right side, and full range of motion in, among other areas, Plaintiff's cervical spine and shoulder, as well as "4/5" strength in his right lower leg.  Tr. 562-63.  He observed that Plaintiff could walk on his heels and toes with minimal difficulty and rise from a chair without any difficulty.  *Id.* at 562.  He concluded that Plaintiff could sit, reach, push, and pull without limitation.  *Id.* at 563.  Medical consultant Dr. Bijpuria reached a similar conclusion.  *Id.* at

11

663. These opinions support the conclusion that Plaintiff was not totally disabled.

The ALJ also considered the opinion of Dr. Acer, a consultative examiner who performed a psychological evaluation of Plaintiff. On examination, Plaintiff displayed "intact" memory and only "[m]ildly impaired" concentration. Tr. 556.

In sum, the reports from these doctors, along with other medical findings in the record, substantially undermined Dr. Caprarella and Dr. Lopez's disability determinations. Given this evidence, the ALJ was entitled to reject their conclusions. *Halloran*, 362 F.3d at 32 (ALJ appropriately rejected treating physician's opinion where other substantial evidence in the record was inconsistent with that opinion); *Gomez v. Saul*, No. 19-CV-04708, 2021 WL 1172674, at *12 (S.D.N.Y. Mar. 29, 2021) ("[O]pinions of nonexamining sources or consultative physicians may override those of treating sources if there is substantial evidence in the record.").

In recognition of Plaintiff's serious but not disabling impairments, the ALJ limited Plaintiff's RFC to sedentary work with certain limitations. This conclusion was

12

predicated on a thorough balancing of Plaintiff's abilities and limitations. The ALJ thus committed no legal error.[1]

## IV. Conclusion

For the reasons set forth above, the Court grants the Commissioner's motion for judgment on the pleadings and denies the Plaintiff's cross-motion. The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

                                           /s/ Eric Komitee
                                           ERIC KOMITEE
                                           United States District Judge

Dated:     December 8, 2021
            Brooklyn, New York

---

[1] Because the ALJ's decision was supported by substantial evidence, his hypothetical question to the vocational expert is not a basis for reversal or remand.